Emilia **GUADAGNO**, Plaintiff,

v.

**WALLACK ADER LEVITHAN ASSOC.,**
**and National Life of Vermont,**
**Defendants.**

No. 95 Civ. 6141 (JSR).

United States District Court,
S.D. New York.

July 16, 1996.

Law Office of Michael Sussman, Goshen, NY, for Plaintiff.

James A. Mitchell, Stillman Friedman & Shaw, New York City, for Defendant Wallack Ader.

### OPINION AND ORDER

RAKOFF, District Judge.

A motion to dismiss under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction can raise a *facial* challenge based on the pleadings, or a *factual* challenge based on extrinsic evidence. *See generally Hulsey v. Gunn*, 905 F.Supp. 1067, 1069–71 (N.D.Ga.1995), and cases there cited. In the latter circumstance, the court may conduct whatever further proceedings are appropriate to determine whether it has jurisdiction. *In re United States Catholic Conference*, 824 F.2d 156, 162 (2d Cir.1987), *rev'd on other grounds*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988). It can, for example, decide the matter on the basis of affidavits or it can hold an evidentiary hearing. *See e.g., Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). In any such proceeding, no presumptive truthfulness attaches to the complaint's jurisdictional allegations, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981);

rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts. *Hulsey, supra; Lord v. Casco Bay Weekly, Inc.*, 789 F.Supp. 32, 33 (D.Me. 1992). Finally, while the Court may resolve a factual dispute over jurisdiction at the time the motion is filed, it also has discretion to defer final determination of the dispute until the time of trial, Fed.R.Civ.P. 15(d), thus conserving judicial resources. *Stadler v. McCulloch*, 882 F.Supp. 1524, 1528–29 (E.D.Pa.1995), *aff'd*, 82 F.3d 406 (3d Cir. 1996).

Applying these principles to the case at hand, the Court (i) confirms its prior determination that it lacks jurisdiction over plaintiff's age discrimination claim; and (ii) preliminarily determines that it possesses jurisdiction over plaintiff's gender discrimination claim, without prejudice, however, to the parties' presenting further evidence bearing on this latter issue at the time of trial.

By way of background, Ms. Guadagno commenced this lawsuit in August, 1995, alleging that she had been unlawfully terminated from the defendants' employ on account of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and on account of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* By memorandum order dated May 16, 1996, the Court granted summary judgment to defendant National Life of Vermont, concluding, on the basis of undisputed facts, that National Life was not an "employer" of plaintiff within the terms of these statutes.

Meanwhile, the remaining defendant, Wallack Ader Levithan Assoc. ("Wallack Ader") filed a motion to dismiss under Fed. R.Civ.P. 12(b)(1), annexing an affidavit challenging as a factual matter the Court's subject matter jurisdiction under both the ADEA and Title VII. To be subject to the ADEA, an employer must have had "twenty or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year" preceding the date of the alleged unlawful discrimination. 29 U.S.C. § 630(b). Under Title

VII, an employer must have had "fifteen or more employees for each working day of each of 20 or more calendar weeks in the current or preceding calendar year" preceding the alleged discrimination. 42 U.S.C. § 2000e(b). In either case, the pertinent provisions must be satisfied in order for a federal court to have jurisdiction. *Regan v. In the Heat of the Nite, Inc.,* No. 93–862 (KBW), 1995 WL 413249 at *1 (S.D.N.Y. July 12, 1995); *Greenlees v. Eidenmuller Enterprises, Inc.,* 32 F.3d 197, 199 (5th Cir.1994).

Since the unlawful termination here complained of occurred in early 1992, the relevant calendar years for the aforementioned jurisdictional prerequisites are 1991–92. In support of its motion to dismiss, Wallack Ader submitted a sworn affidavit denying it had more than nine employees during these years. Ms. Guadagno, in response, produced a sworn affidavit contending Wallack Ader had more than 20 employees during these years. While the supporting memoranda of the parties were in agreement that the question of whether a particular person is an "employee" for these purposes is to be determined according to common law principles of agency, *see Frankel v. Bally,* 987 F.2d 86, 90 (2d Cir.1993); *Jones v. Mega Fitness,* No. 94 Civ. 8393, 1996 WL 267941 (S.D.N.Y. May 21, 1996); *McFadden–Peel v. Staten Island Cable,* 873 F.Supp. 757, 760–61 (E.D.N.Y.1994), the parties strongly disagreed as to the factual extent of agency exercised over particular individuals by Wallack Ader during the pertinent period. Accordingly, on May 23, 1996, the Court conducted an evidentiary hearing to try to resolve the relevant factual dispute.

At the close of the hearing, on May 23, the Court made express findings of fact, on the basis of which it concluded that plaintiff had failed to carry her burden of establishing that Wallack Ader had 20 or more employees at the time period relevant to her claim. Accordingly, the Court dismissed the ADEA claim. At the same time, however, the Court stated that it could not yet determine whether Wallack Ader had 15 or more employees at the relevant time period; for even though the Court found that Ms. Guadagno's testi-

mony alone was too inconsistent to be reliable, plaintiff had introduced at least one contemporaneous Wallack Ader document that indicated (contrary to the testimony of Wallack Ader's witnesses) that Wallack Ader had 15 employees near to the relevant time period. Moreover, it appeared that plaintiff had previously requested, but had not yet been furnished with, certain additional contemporaneous records of Wallack Ader that might serve to corroborate its claim of 15 or more employees. Accordingly, the Court directed Wallack Ader to produce the missing records (particularly tax records) for the relevant 1991–1992 period. Both parties were also afforded the opportunity to make additional submissions in the way of affidavits and legal memoranda.

Having now received and reviewed the requested records and the additional submissions, the Court finds that the plaintiff has sufficiently established jurisdiction under Title VII to warrant permitting the case to proceed to trial, without prejudice, however, to reconsideration in light of any further evidence on the issue adduced at that time.

■ Of the Wallack Ader records not available at the May 23 hearing but since produced, the most complete are the New York "Employer's Quarterly Reports Of Wages Paid to Each Employee" (Form WRS–2) that were submitted by Wallack Ader to the New York State Department of Taxation and Finance for each of the eight quarters of calendar years 1991–92. Each of these reports requires Wallack Ader to state "total number of employees reported" and to "list your employees" by name, social security number and "amount of gross wages paid." In each of these reports but one, Wallack Ader states that it has 15 or more employees. While in each such report the list of named employees includes a Wallack Ader principal, Jack Levithan, who both parties concede does not qualify as an "employee" under Title VII, a reduction of one from the stated totals still leaves five of the eight quarters with employee totals of 15 or more, far more than the twenty weeks needed to invoke jurisdiction under Title VII.[1]

---

1. By contrast, once Mr. Levithan's name is sub-    tracted from the total, only one quarter, (*i.e.,* 13

While the corresponding federal forms produced by Wallack Ader are less complete, they tend to corroborate the admissions made in the state forms. For example, while Wallack Ader, for reasons unexplained, usually did not complete the blank asking for "number of employees" in the Federal Forms 941 ("Employer's Quarterly Federal Tax Return") filed for the eight quarters of 1991–92, in one such form (for the first quarter of 1992), where it did fill in this blank, the number given was "16." Moreover, in each such report, the amounts listed by Wallack Ader for "total wages" of its employees corresponded exactly to the totals for the 15 or more employees listed in the corresponding state forms described above.

Still further corroboration is evidenced by the fact that Wallack Ader submitted federal W–2 wage statements for 18 employees in 1991 and 20 employees in 1992. After subtracting the W–2 statement for Mr. Levithan, and allowing for the possibility of one or two employees whose low level of wages suggests that they may have worked less than twenty weeks during the relevant years, the W–2 totals for 1991–92 would still be 15 and 17, respectively, corroborating the existence of Title VII jurisdiction.

Having belatedly produced these records, Wallack Ader attempts to minimize their significance by submitting an affidavit of a witness it chose not to call at the evidentiary hearing, Alice Blundo, who was Wallack Ader's office manager during the relevant years. Ms. Blundo avers that Wallack Ader had only 10 actual employees during the relevant years, and that the higher totals reflected on the tax forms is attributable to inclusion, along with Mr. Levithan, of "employees of the independent insurance agents." (Blundo Affidavit, ¶ 4). Specifically, according to Ms. Blundo, "[t]here were instances where Wallack Ader—solely as an administrative convenience to the independent agents—issued payroll checks to the employees of agents and made appropriate payroll related contributions on behalf of those persons." (Blundo Affidavit, ¶ 3).

Furthermore, "[b]ecause in certain instances Wallack Ader issued payroll checks to employees of the insurance agents—and made corresponding contributions—Wallack Ader also listed those persons on various wage and payroll reporting documents, including its quarterly Withholding and Wage Reports made to the New York State Department of Taxation and Finance." (Blundo Affidavit, ¶ 4.)

The Court concludes that these averments are entitled to little weight. Even Wallack Ader's principal witness at the hearing, Michael Wallack, did not contend that there were so few as 10 employees during the relevant period, but claimed instead that there were around 12. The only pertinent non-tax records produced by Wallack Ader, to wit, reports for employee disability insurance premiums paid by Wallack Ader during the relevant period, show an average of 14 employees during the period. One is left with the unavoidable conclusion that Wallack Ader feels free to interpret "employee," and to re-interpret its prior use of that term, inconsistently and all-too-flexibly, so as to suit the purpose of the moment.

The contemporaneous tax filings admit of no such equivocation, and the definition of "employee" contained in the applicable tax regulations is irreconcilable with the construction Wallack Ader now seeks to place upon its response to questions in those filings calling for information about "employees." Under the Internal Revenue Code, for example, an "employee" means "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2). This is identical to the Title VII definition. *Frankel v. Bally, Inc., supra,* 987 F.2d at 90; *Jones, supra* 1996 WL 267941; *McFadden–Peel, supra,* 873 F.Supp. at 760–61. In now arguing for Title VII purposes that it had fewer than 15 employees in 1991–92, Wallack Ader in effect would have this Court believe that, as to at least some of the people it claimed as "employees" on its 1991–92 tax forms, it

weeks) includes the 20 or more employees necessary for ADEA jurisdiction. Thus, these records, though produced after the hearing of May 23,

reinforce the Court's determination at that hearing that no jurisdiction exists under ADEA.

interpreted "employee" to mean nearly the opposite of what it was defined to mean.

 This is not convincing, either as a matter of fact or as a matter of law. As a legal matter, Wallack Ader's formal tax statements of its number of "employees," defined by law in a manner identical to Title VII usage, are contemporary admissions of such formality and weight that Wallack Ader may not now be heard to deny them. *Cf. Matter of Stafos,* 666 F.2d 1343, 1346 (10th Cir.1981), *cert. denied sub nom., Stafos v. Bell,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982). Alternatively, as a matter of fact, the nature and solemnity of these tax documents, required by law to be filed with the appropriate governmental agencies under penalty of perjury or its equivalent, attest to the substantial weight that must be accorded these contemporaneous admissions as against the self-serving, transient, and inconsistent interpretations now offered by Wallack Ader.

Accordingly, the Court concludes, not only on the basis of the tax records but also of the entire record before the Court, that plaintiff has carried her burden of establishing subject-matter jurisdiction under Title VII. Nonetheless, the Court grants leave to the defendant to adduce at trial, if it can, additional evidence bearing on whether it had fewer than 15 employees during the relevant period—a determination that will still be for the Court (not the jury) to make. *See Stetka v. Hunt Real Estate Corp.,* 859 F.Supp. 661, 665 (W.D.N.Y.1994). There is no stage in the proceedings at which it would be too late for the Court to reconsider the question of subject matter jurisdiction. *Mortensen v. First Federal Savings and Loan Ass'n.,* 549 F.2d 884, 891–92 (3d Cir.1977).

For the foregoing reasons, the motion of defendant Wallack Ader to dismiss the claims against it for want of jurisdiction is granted with respect to the ADEA claims (for the reasons stated at the May 23 hearing) and is denied with respect to the Title VII claims (for the reasons stated herein). In view of this conclusion, the parties are further directed to prepare a new Case Management Plan, in accordance with the Court's revised Form D (copies of which will be mailed forthwith to the parties), that will result in this case being ready for trial no later than December 2, 1996, and to submit such plan to the Court for its approval by no later than July 26, 1996.

SO ORDERED.