Emilia **GUADAGNO,** Plaintiff,

v.

**WALLACK ADER LEVITHAN ASSOCIATES, National Life of Vermont,** Defendants.

**95 Civ. 6141 (JSR).**

United States District Court, S.D. New York.

Jan. 14, 1997.

---

Sussman Bergstein Wotorson & Whateley by Michael Sussman, Goshen, NY, for Plaintiff.

Law Offices Stillman, Friedman & Shaw, P.C. by Julian W. Friedman and James A. Mitchell, New York City, for Defendant Wallack Ader Levithan Associates.

## OPINION AND ORDER

RAKOFF, District Judge.

District Courts wade into capricious currents at their peril; but the pending motions in this case impel the Court to address aspects of two unsettled but recurrent issues in federal employment discrimination law. They are, first, whether proof of "pretext"— *i.e.,* proof from which a fact-finder could infer the unbelievability of an employer's stated reasons for its challenged actions—is sufficient to defeat the employer's motion for summary judgment; and, second, to what extent, if any, a party to such a motion may advance a legal or factual position at odds with statements the party has previously made under oath.

Plaintiff Emilia Guadagno, a long-time secretarial and clerical employee of defendant Wallack Ader Levithan Associates and its predecessors ("Wallack Ader"), was terminated in early 1992 for what she alleges was "no stated reason" (Complaint, ¶ 7). At the time of her termination, Ms. Guadagno was 47 years old and unmarried. She thereafter commenced this lawsuit, alleging that Wallack Ader and co-defendant National Life of Vermont—who she alleged was also her employer (Complaint ¶ 12)—had discriminated against her on the basis of her "age, gender and marital status" (Complaint, ¶ 21), in violation of, respectively, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The defendants promptly moved to dismiss on the grounds that National Life of Vermont had never functioned as plaintiff's employer and that, at the time of the termination and the other discriminatory acts complained of (relating to salary and working conditions), Wallack Ader had neither the 20

employees necessary for statutory jurisdiction under the ADEA nor the 15 employees necessary for statutory jurisdiction under Title VII. Following oral argument, the Court dismissed National Life of Vermont as a defendant and ordered an evidentiary hearing on the jurisdictional issues. *See* Memorandum Order, May 16, 1996. Following that hearing, the Court dismissed the ADEA claim, but concluded that there was sufficient evidence that Wallack Ader had 15 employees at the relevant times to permit the case to go forward on the Title VII claim. *See Guadagno v. Wallack Ader Levithan Assoc.,* 932 F.Supp. 94 (S.D.N.Y.1996). Wallack Ader was granted leave, however, to move for reconsideration of this determination at a later stage of the proceedings if it were able to adduce additional evidence that it had fewer than 15 employees during the relevant period. *Id.* at 98.

At the close of discovery, Wallack Ader duly renewed its jurisdictional motion, advancing new evidence that it had fewer than 15 employees at the relevant times.[1] Additionally, it moved for summary judgment on the ground that "plaintiff's own testimony and interrogatory answers describing the substance of her claim demonstrate as a matter of law that plaintiff cannot make out a recognized cause of action for discrimination under Title VII." Defendant's Notice of Motion at 1–2. Specifically, defendant argued that "plaintiff's deposition testimony and her responses to Wallack Ader's discovery requests demonstrate that while plaintiff describes her Title VII claim as being based on gender and marital status, it is really based on the claim that she was discriminated against [only] because of her marital status ... [which] is not a proper basis for a claim under Title VII." Defendant's Summary Judgment Memorandum at 20.

In response, plaintiff did not challenge the contention that discrimination on the basis of marital status alone would not state a viable claim under Title VII. *See Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 310 n. 9 (2d Cir.1996); *Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 200 n. 12 (S.D.N.Y.1990); *see also Fisher v. Vassar College,* 70 F.3d 1420, 1447 (2d Cir.1995). But she strenuously disputed that her deposition responses excluded a Title VII claim premised on gender discrimination. For one thing, she argued, her deposition was entirely silent as to the portion of her Title VII claim relating to termination. *See, e.g.,* Affidavit of Emilia Guadagno, Dec. 5, 1996, ¶ 1 ("At my deposition, defendant's counsel asked me no questions concerning the circumstances of my termination or the basis of my central claim—that I was terminated on the basis of my gender."). More generally, she argued, any concessions she may have made in her deposition as to the legal theory or factual premise of her Title VII claim did not legally estop her from pursuing a validly pled Title VII claim as to which she had otherwise met her evidentiary burden under Rule 56. *Cf.* Plaintiff's Summary Judgment Memorandum at 18–23.

In substantial measure, the Court concurs with both of these arguments. While defendant's summary judgment memorandum purports to offer "an exhaustive examination of all of plaintiff's purported bases for her Title VII claim," Defendant's Summary Judgment Memorandum at 34, in actuality it is quite selective, wholly ignoring the claim of discriminatory termination and considerably distorting some of the sources on which it purports to rely.[2] Even on their face, moreover, the "admissions" on which defendant seeks to rely do not have the legally dispositive effect defendant attributes to them.

For example, on the subject of vacation benefits, plaintiff testified at her deposition as follows:

---

1. Although noticed as part of defendant's Rule 56 motion, this prong of defendant's motion is also in effect a motion under Rule 12(b)(1).

2. For example, defendant's memorandum states (at p. 23) that "plaintiff's complaint, itself, makes no claim of discrimination based on 'sex plus marital status.' On the contrary, plaintiff's own allegation is that any discrimination is based on marital status alone ... " This is wholly belied by ¶ 18 of the Complaint. ("Plaintiff was terminated on the basis of the combination of her gender, age and marital status") as well as by ¶¶ 10, 12, and 13 of the Complaint (alleging gender discrimination).

Q. And is it your contention that the decision as to who could take vacation at holiday time and who could not was based upon who was married and who was not?

A. Yes.

(Guadagno Dep.Tr. 25).

Had this response been given in answer to a contention interrogatory, its legal effect might have been to preclude plaintiff from contending that the portion of her Title VII claim relating to holiday vacations alleged discrimination on any ground other than marital status.[3] *See American Auto. Assoc. v. AAA Legal Clinic,* 930 F.2d 1117, 1120 (5th Cir.1991); *Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health and Welfare Pension Fund of Philadelphia,* 850 F.2d 1028, 1036 (3d Cir.1988); *but see Kelly v. Curtis,* 21 F.3d 1544, 1548 (11th Cir.1994). Its effect in response to a question put at her deposition stands, however, on entirely different footing. Quite aside from the numerous evidentiary objections to its admissibility preserved under Fed.R.Civ.P. 32(b) and (d), its effect at most would be no more than if Ms. Guadagno had testified at trial that she possessed no personal knowledge whether Wallack Ader discriminated with respect to holiday vacations on any ground other than marital status. Such testimony would not preclude her at trial from offering competent evidence through documents or through the testimony of persons such as Messrs. Wallack and Ader who did have personal knowledge tending to prove that the determination of holiday vacations was also based on other forms of discrimination, such as gender.

 This difference in estoppel effect between a contention interrogatory response and a deposition answer derives from both practical and functional concerns. As a practical matter, a party-deponent cannot reasonably be held to the same precision of expression, breadth of knowledge, or legal expertise as a party responding through counsel to a written interrogatory. As a matter of function within the legal process, the purpose of a response to contention interrogatory is entirely different from an answer to a question at a party deposition, the difference being that between a "judicial admission" and an "evidentiary admission." As explained by the Seventh Circuit:

Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." [citations omitted]. A judicial admission is conclusive, unless a court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. . . . When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.[4]

*Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir.1995).

The real question raised by defendant's summary judgment motion, therefore, is not whether plaintiff has legally conceded the absence of gender discrimination but rather whether she has adduced, from whatever source, any discernible factual evidence of gender discrimination sufficient to support her Title VII claim. Implicitly conceding that her affirmative proof of gender discrimination is sparse, plaintiff nonetheless argues that "[o]n a motion for summary judgment, plaintiff may satisfy his [sic] ultimate burden by indirect proof that the employer's prof-

3. No such interrogatory response was given in this case. More generally, while defendant's motion purports to be grounded not only on plaintiff's deposition responses but also on her responses to interrogatories and other discovery requests, in actuality defendant relies almost exclusively on plaintiff's deposition testimony for its argument that she has limited her claim to marital status. *See* Defendant's Summary Judgment Memorandum at 23–33.

4. This is not to suggest, of course, that a party can avoid summary judgment by the ruse of filing a sham affidavit contradicting a specific fact of which he has personal knowledge that he has previously admitted under oath in the same case. *See Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996), *citing Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

fered explanation [for the allegedly discriminatory activity] is unworthy of belief." Plaintiff's Summary Judgment Memorandum at 20. In other words, in the legal parlance common to Title VII cases, plaintiff argues that proof of "pretext" alone is sufficient to avoid summary judgment.

If this indeed is the law, defendant's summary judgment motion must be denied, for, taking all evidence and reasonable inferences most favorably to plaintiff, the Court finds that Ms. Guadagno has indeed adduced indirect evidence from which a jury could infer that the proffered reasons given for Mr. Guadagno's termination are pretextual. Specifically, whereas Mr. Wallack, who personally terminated Ms. Guadagno, testified that he fired her because "[s]he didn't measure up to my requirements either from the standpoint of ability or aptitude—or attitude" (Wallack Dep. at 5), his co-principal, Mr. Ader, who had kept Ms. Guadagno in his employ for 20 years, testified that he had not approved her termination in advance, that it occurred without his knowledge while he was on vacation, that "When I returned from vacation, I was told that Emmy was fired [but] I wasn't told what the principal reason was," and that at most he may have been told that Ms. Guadagno was "frightening people." (Ader Dep. at 66).

From this and other evidence, a reasonable juror could infer that Mr. Wallack's stated reasons for the termination, especially the references to alleged lack of ability or aptitude, are pretextual. Indeed, there is considerable evidence from which a jury could infer that Mr. Wallack, who joined forces with Mr. Ader in 1989, personally disliked Ms. Guadagno from the start, but, knowing that Mr. Ader liked her, sought then and continues now to camoflage his dislike because of his relationship with Ader. But far more sparse, if not indeed non-existent, is any meaningful evidence that the reason for Wallack's dislike of Ms. Guadagno had anything to do with her gender (or, for that matter, her age, which the now-dismissed ADEA claim also alleged was an independent cause of her termination).

█ In short, while there is evidence from which a jury could infer that Mr. Wallack has

lied about his reasons for terminating Ms. Guadagno—and even some evidence that he did so to conceal the truth from his partner Ader—the proof that she was the victim of intentional gender discrimination pretty much reduces to the fact that she was a woman who was terminated for reasons about which her employer continues to dissemble. Is this sufficient to avoid summary judgment?

The question (or its equivalent in comparable cases) has much perplexed the federal courts of appeals. In effect, the Third Circuit, sitting en banc, has answered the question in the affirmative and the Fifth Circuit, also sitting en banc, has answered the question in the negative. *Compare Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir.1996) (en banc) *with Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996). Similar divisions of opinion exist between, for example, the District of Columbia and Seventh Circuits on the one hand and the Eleventh and First Circuits on the other. *Compare Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995) and *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994) *with Isenbergh v. Knight–Ridder Newspaper Sales Inc.*, 97 F.3d 436, 442–43 (11th Cir.1996) and *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842–43 (1st Cir. 1993).

The difficulty ultimately traces back to the tripartite allocation of the burden of production established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under that scheme, a Title VII plaintiff can establish a "prima facie" case of discriminatory termination simply by coming forward with evidence that she is a member of a protected class (*e.g.*, women) that she was qualified for the job from which she was terminated, and that she was replaced by someone not of the protected class (*e.g.*, a man). *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The burden then shifts to the defendant employer to produce evidence that the termination (or other adverse employment action) was made

for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. If the employer does so, the burden then shifts back to the plaintiff to come forward with evidence "that the proffered reason was not the true reason for the employment decision" but rather was a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The Court's descriptions of the purpose behind these shifting allocations have varied. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court described the "presumption" created by a plaintiff's coming forward with her prima facie case in language somewhat akin to a legislative presumption: "because we presume these acts, if otherwise unexplained, are more likely than not based on impermissible factors." *Id.* at 577, 98 S.Ct. at 2949–50. On other occasions, however, the Court has spoken of the allocations as having the narrower, procedural purpose of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination" by placing the burden of going forward with the party best suited to produce such evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (*quoting Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8). The latter, process-based formulation would appear more consistent with the Court's holding in *Hicks, supra,* that once an employer comes forward with evidence of a nondiscriminatory reason for its action, "[t]he presumption [of the prima facie case], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture," *Hicks,* 509 U.S. at 510, 113 S.Ct. at 2749. It is also more consistent with the Court's repeated reaffirmations that it is plaintiff who retains the "ultimate burden of persuading the [trier of fact] that [she] has been the victim of intentional discrimination." *Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747–48, *quoting Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

In any event, the implementation and expansion of this aspect of the *McDonnell Douglas* doctrine in the lower federal courts has substantially been predicated on its role in forcing employers to reveal their rationales for challenged employment actions relating to members of protected classes—the notion being that it would be almost impossible for plaintiffs to prove discrimination without access to such information and the opportunity to challenge it. *See, e.g., Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). Thus, the doctrine has been applied well beyond its origin in a racial discrimination case to cases involving virtually all forms of actionable discrimination, *see, e.g., Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219, 1224–25 (2d Cir.1994) (Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995) (Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*),—even though it is far from obvious that replacement of, *e.g.,* a qualified 40–year–old employee by a qualified 39–year–old employee should raise the same "prima facie" inference of unlawful discrimination as replacement of a qualified black employee by a qualified white employee. So, too, the doctrine applies in cases, like this one, alleging multiple forms of discrimination, *see, e.g., Fisher,* 70 F.3d at 1432 (age and sex discrimination); *Montana v. First Federal Savings and Loan Assoc. of Rochester,* 869 F.2d 100, 103 (2d Cir.1989) (same)—even though it is problematic whether an employer's replacement of a qualified foreign-born black female over 40 years of age by a qualified native-born white male under 40 years of age reasonably raises an inference that "more likely than not" the employer was intentionally discriminating on the grounds of national origin, race, sex, and age, all at once.

Perhaps most tellingly, the nature and extent of the showing required of a plaintiff to make out the "prima facie" case sufficient to invoke the initial burden-shifting "presumption" under *McDonnell Douglas* has been steadily diluted to the point where the Second Circuit has repeatedly described it as "de minimus." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Meiri v. Dacon,* 759 F.2d 989, 996 n. 10 (2d Cir.1985). Thus, as in the case here at bar, it is unnecessary for a terminated employee to show that she was actually replaced by a

person not of the protected class (or classes); she need only show, for example that the employer sought new applicants from the unprotected groups, or accorded more favorable treatment to employees not in the protected group, or made invidious comments about others in the employee's protected group—or simply that the "sequence of events" or "timing of the discharge" raised some inference of discriminatory intent. *Chambers,* 43 F.3d at 37.

This minimization of the proof required to make out a prima facie case under the federal employment discrimination laws may make sense if the purpose is to enable a plaintiff to readily obtain discovery of an employer's internal decision-making processes, rather than being "stonewalled" and non-suited on the pleadings: for, without such access, few if any victims of discrimination could ever prove their case.[5] But in easing initial burdens in order to facilitate such access, the courts likewise make it easier for plaintiffs to make out what is referred to as a "prima facie" case without in reality coming forward with evidence that constitutes meaningful proof of discrimination.

■ Put another way, it is important to remember that the "presumption" created by making out a "prima facie" case under *McDonnell Douglas* carries no lasting evidentiary weight but, rather, becomes a nullity as soon as a defendant meets its own burden of going forward. *See Hicks,* 509 U.S. at 516–17, 113 S.Ct. at 2752–52. That is why, as one moves beyond discovery to summary judgment, an employer's unrebutted proof of a non-discriminatory rationale for the challenged action is sufficient to require judgment in the employer's favor. *See Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 92 (2d Cir.1996).

Put still a different way, while the proof a plaintiff offers to meet her "prima facie" case may sometimes supply independent evidence of discriminatory intent, quite often it will not. But supposing, in the latter situation, a plaintiff, in addition to offering the bare *de minimus* evidence needed to make out a "prima facie" case, now adds, in response to the employer's stated nondiscriminatory reason for the challenged action, some genuine though modest proof that the employer's proffered rationale is not credible. This *may* be enough to defeat summary judgment; but *must* it be?

Plaintiff here argues in effect that it must—on the theory that from the fact that an employer lied about its proffered reason for a challenged action a juror could draw the adverse inference that its real reason was discrimination. But, as the facts of the instant case indicate, where there are apparent other reasons why the employer would lie and little or no other evidence of discrimination, it may be entirely unreasonable for a juror to infer discrimination from the mere act of lying. Moreover, an adverse inference from a witness's perjury has not ordinarily been deemed sufficient to carry a proponent's burden of proof. As the Supreme Court held in *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986):

> "[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512 [104 S.Ct. 1949, 1965–66, 80 L.Ed.2d 502] (1984). Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as

---

5. However, it is noteworthy that in federal securities cases, where a shareholder plaintiff typically has considerably less pre-discovery access to the company's internal workings than an employee plaintiff in a discrimination suit, the Second Circuit, even before enactment of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77a *et. seq.,* required plaintiffs to plead specific facts evidencing fraudulent intent (notwithstanding that the particularity requirements of Fed.R.Civ.P. 9(b) do not on their face apply to

intent) or face dismissal. *See In re Time Warner, Inc. Securities Litigation,* 9 F.3d 259, 269–70 (2d Cir.1993). Perhaps the reason for the difference in approach is that the Court of Appeals has long ago become aware of the dangers of "strike suits" masquerading as securities fraud claims whereas it appears less familiar with the comparable problem in the area of employment discrimination actions. But here, as elsewhere, the bad will drive out the good unless held in check.

the plaintiff has had a full opportunity to conduct discovery.

*Also cf. Dyer v. MacDougall,* 201 F.2d 265, 268–69 (2d Cir.1952) (Hand, J.). Indeed, if the rule were otherwise, no party whose deposition or trial testimony were controverted could ever prevail under either Fed. R.Civ.P. 56 or Fed.R.Civ.P. 50, since his adversary could always claim that the jury would find for the adversary on the basis of adverse inference.

When a jury gets an employment discrimination case, it is not (under the preferred view) instructed as to the various shifts and counter-shifts of the *McDonnell Douglas* scheme, but simply is asked to determine whether, on all the evidence, plaintiff has carried its ultimate burden of proving intentional discrimination. *See Cabrera v. Jakabovitz,* 24 F.3d 372, 380 (2d Cir.1994) (burden-shifting language described as "at best irrelevant, and at worst misleading to a jury."); *but see Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 200 (1st Cir.1987) (advocating use of burden-shifting language in jury charges). One would have thought that a court reviewing the same case on a motion under Rule 56 or Rule 50 would simply need to determine whether there was a sufficient quantum of evidence under established principles of law, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511, to permit the case to go to a jury—rather than applying some specialized rule that proof that an employer lied about the reason for his challenged action automatically requires sending the case to the jury.

Yet plaintiff's argument in favor of such a specialized rule is not without substantial precedent. First and foremost, the Supreme Court in *Hicks* stated that "rejection of the defendant's proffered reasons [for its challenged actions] will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is required.'" *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749 (*quoting Hicks v. St. Mary's Honor Center,* 970 F.2d 487, 493 (8th Cir.1992)).

This was dictum, as the holding of *Hicks* was simply that a trier of fact's rejection of an employer's asserted reason for its challenged action does not *compel* judgment for the plaintiff. *See Hicks,* 509 U.S. at 515, 113 S.Ct. at 2751–52. But it could not have been unconsidered dictum, as a footnote to the foregoing quoted sentence sought to anticipate objections to it by stating that "there is nothing whatever inconsistent between this statement and our later statements that (1) the plaintiff must show both that the reason was false, and that discrimination was the real reason, ... and (2) it is not enough ... to disbelieve the employer." *Hicks,* 509 U.S. at 511 n. 4, 113 S.Ct. at 2750 n. 4.

What is missing, however, from the Court's discussion—because it was never remotely presented by the facts in *Hicks*—is whether cases exist in which rejection of the employer's proffered reasons for its challenged actions not only does not compel a finding of discrimination but even does not permit, on the facts of a particular case, a finding of discrimination. Perhaps the Court imagined that this could never be the case because the same proof that made out the plaintiff's "prima facie" showing under *McDonnell Douglas* would necessarily create a context in which rejection of an employer's explanation would always permit a finding of discrimination. But with the progressive dilution of the quantum and nature of the proof needed to make out the "prima facie" case under Title VII, cases of this unimagined kind have in fact become common: the instant case being arguably one example.

As previously noted, courts require next-to-nothing to satisfy the "prima facie" requirement sufficient to invoke the *McDonnell Douglas* shift of burden to the employer, because they see the need to force employers to state the reasons for, and permit discovery of, their challenged actions, rather than permitting them to stonewall. But this function has largely been served at the Rule 56 stage, and entirely at the Rule 50 stage. At these points, as previously stated, the *McDonnell Douglas* presumptions, having served their functions, are deemed nullities. *See Hicks,* 509 U.S. at 518–19, 113 S.Ct. at 2753–54; Fed.R.Evid. 301. Bereft of any presumptive

effect, the smidgen of evidence needed to make out the "prima facie" showing and the snippet more needed to raise a credibility issue as to the employer's response may not rise, even with the benefit of every inference (including adverse inferences), to the level of proof from which any reasonable juror could infer intentional discrimination.

Accordingly, while some circuits such as the Third have accepted the *Hicks* dictum as binding, others such as the Fifth have declined to follow it. *Compare Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir.1996) (en banc), *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995), and *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994) *with Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996), *Isenbergh v. Knight–Ridder Newspaper Sales Inc.*, 97 F.3d 436, 442–43 (11th Cir.1996), and *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842–43 (1st Cir.1993).

Deciding where the Second Circuit stands on this contentious issue has its own difficulties. On the one hand, there is a line of cases most recently exemplified by *Chertkova v. Connecticut General Life Insurance*, 92 F.3d 81 (2d Cir.1996), in which the Court of Appeals has held that " '[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely. than not the [unlawful basis] was the real reason for the discharge.' " *Id.,* at 92 (*quoting Woroski v. Nashua Corp.*, 31 F.3d 105, 108–09 (2d Cir.1994)). *See also, e.g., Gallo,* 22 F.3d at 1225, and *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142 (2d Cir.1993). If the dictum from *Hicks* means what plaintiff here says it means, then the second component of the above-quoted formulation would be surplusage. It would seem to follow that these cases, all of which expressly indicate their reliance on *Hicks,* either reject its dictum or choose to interpret it in a manner different from plaintiff.

Side by side with these cases, however, is another line of Second Circuit decisions, most recently exemplified by *Binder v. Long Island Lighting Co.*, 57 F.3d 193 (2d Cir.1995),

in which the Court of Appeals appears to accept the *Hicks* dictum literally and without qualification. Thus, in *Binder*—an unusual case involving both general and special verdicts—the Court, quoting the *Hicks* dictum, specifically held that the jury's finding of employer pretext was sufficient in itself to support the jury's finding of discrimination. *See also EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994); *Cabrera v. Jakabovitz,* 24 F.3d 372, 385 (2d Cir.1994); *DeMarco v. Holy Cross High School,* 4 F.3d 166, 171 (2d Cir.1993).

While the District Court in the case at bar finds it well nigh impossible to fully reconcile these two lines of cases, perhaps the Court of Appeals will undertake to do so in the near future. Or perhaps the division in Second Circuit precedent simply reflects the fact that the dictum in *Hicks* is finally inconsistent with the rest of the opinion, footnote 4 in *Hicks* notwithstanding. For the time being, however, this lowly District Court finds itself in the unenviable position of being confronted with a summary judgment motion that it would grant under its reading of the *Chertkova* line of cases and deny under its reading of the *Binder* line of cases. In this awkward posture, the Court must fall back on more general statements of the Court of Appeals directing district courts to be particularly "cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo,* 22 F.3d at 1225. Accordingly, the Court can conclude only that, on all the facts and circumstances here presented, caution dictates the denial of Wallack Ader's pending motion for summary judgment to the extent that it rests on the ground that there is no proof of gender discrimination.

■ Defendant, however, has another arrow in its quiver, and that is its renewal of its motion to dismiss the Title VII claim for want of jurisdiction, on the ground that Wallack Ader did not employ 15 or more persons at the time of the alleged discriminatory acts. In denying this motion prior to discovery, the Court relied chiefly on Wallack Ader's prior statements, in tax and labor forms filed at the time of the events here complained of, that it had 15 or more "employees," whose names it listed on several of the forms. *Guadagno,* 932 F.Supp. at 98. These representations, some of which were made under

oath, were of sufficient formality that the Court deemed them entitled to very substantial weight, both as a matter of fact and as a matter of law. *Id.* At the same time, they were not forever dispositive of the issue, as the Court gave leave to defendant to adduce at subsequent stages of these proceedings "additional evidence bearing on whether it had fewer than 15 employees during the relevant period ... [because] [t]here is no stage in the proceedings at which it would be too late for the Court to reconsider the question of subject matter jurisdiction." *Id.*

■ To employ the terminology used elsewhere above, what the Court effectively determined in its earlier opinion was that, even though the tax and labor statements were evidentiary admissions rather than judicial admissions and therefore subject to being controverted by the very party making them, they were of sufficient weight and formality as to create a rebuttable presumption of their truthfulness.[6] Now, however, defendant has indeed rebutted the presumption, and very convincingly at that. Specifically, it offers the sworn testimony of four independent insurance agents attesting that five of the persons listed as "employees" on the Wallack Ader forms were actually the personal secretaries of these independent agents (one of whom had two such employees). They further attest that these secretarial employees were hired by, worked for, and paid by these independent agents, who exclusively determined all the terms and conditions of their employment. Finally, they attest that the only reason these secretarial employees were erroneously listed as Wallack Ader employees on the tax and labor forms was because the agents used Wallack Ader's checkwriting facilities to generate paychecks and the paycheck list was then transferred to the forms without anyone's eliminating the names of those persons whose paychecks were actually reimbursed by outside agents. *See* Deposition of James A. Chisholm at 5; Deposition of Howard L.

Polansky at 4–5; Deposition of Robert George at 4; Deposition of Richard Bohan at 5.

Aside from plaintiff's own testimony—which at the prior evidentiary hearing the Court (which acts as fact-finder on this jurisdictional motion) found to be completely unreliable, *see* Transcript of Evidentiary Hearing of May 23, 1996 at 141—the sworn testimony of these four agents was not in any material respect contradicted by plaintiff, either in the depositions themselves or through other evidence, and accordingly must be deemed proven. Eliminating the five independently employed secretaries from the listings on the Wallack Ader forms reduces the total number of Wallack Ader employees to 14 or fewer at all times relevant.

Accordingly, defendant's renewed motion to dismiss plaintiff's only remaining claim for lack of jurisdiction is granted. The Clerk is directed to enter judgment in favor of defendant.

SO ORDERED.

---

**6.** To the extent that the Court's prior statement that these "admissions" [are] of such formality and weight that Wallack Ader "may not now be heard to deny them" (932 F.Supp. at 97) conveyed a suggestion of judicial estoppel, this suggestion was negatived by the Court's giving leave, in the same opinion, for defendant to reopen the issue if new evidence was uncovered. *Id.* In any event, judicial estoppel does not apply where, as here, the prior representations were not made for the purpose of obtaining a benefit. *See Young v. United States Dept. of Justice,* 882 F.2d 633 (2d Cir.1989). *See also Mohamed v. Marriott Int'l, Inc.,* 944 F.Supp. 277, 282–83 (S.D.N.Y.1996); *Simon v. Safelite Glass Corp.,* 943 F.Supp. 261, 264–65 (E.D.N.Y.1996).