### SEG VANGUARD GENERAL CORPORATION
Plaintiff,

v.

**Jianxiong JI, a.k.a. Peter J.X. Ji, Hua Li, Jianwen Ji, a.k.a. Mark Ji, Beston Development, Inc., and Pierce International Corp., Defendants.**

### No. 01 Civ. 6153(VM).

United States District Court,
S.D. New York.

April 16, 2002.

Andrew Leslie Margulis, Ropers, Majeski, Kohn & Bentley, New York City, for Plaintiff.

Christopher J. Sullivan, Herrick & Feinstein, New York City, for Defendants.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff filed this action on July 9, 2001, alleging, *inter alia,* claims of fraud and unjust enrichment against the defendants. Plaintiff further alleged that the Court's subject matter jurisdiction over the action was based on a diversity of citizenship between the parties, pursuant to 28 U.S.C. § 1332. On December 11, 2001, defendants filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 17(a) and 17(b), asserting *inter alia,* that the Court lacked subject matter jurisdiction over this matter due to a lack of complete diversity among the parties. For the reasons set forth below, defendants' motion to dismiss is granted.

### I. BACKGROUND

SEG Vanguard is a wholly owned subsidiary of Hainan SEG International Trust and Investment Corporation (hereinafter "SEG International") and is incorporated under the laws of New York. On March 30, 2000, defendant Peter Ji was terminated as president of SEG Vanguard for alleged misconduct and misappropriation of company funds. (Affidavit of Mei May Ruan, dated December 17, 2001 (hereinafter "Ruan Aff."), Exhibit B and Compl. ¶¶ 13–

31.) Until this time, SEG Vanguard had maintained offices at 17 State Street, New York, New York.

On April 14, 2000, Mei May Ruan (hereinafter "Ruan") became President of SEG Vanguard, allegedly to "wind down" the company's affairs and to prosecute this case against the defendants. (Ruan Aff. ¶ 8.) Accordingly, SEG Vanguard terminated the lease of its offices in New York, sold certain assets, and officially changed its address to Ruan's home in Livingston, New Jersey. (*Id.* ¶ 10–11.) The company also designated Ruan's home as the address for service of process of the company. (*Id.* ¶ 13.) On August 21, 2000, the Company filed an application with the New Jersey Department of Treasury for reinstatement of its authority to do business in New Jersey. (*See* Supplemental Affidavit of Grant R. Cornehls, dated March 1, 2002, (hereinafter "Cornehls Aff."), Ex. C.)

From Ruan's home, SEG Vanguard conducted a number of activities, allegedly for the sole purpose of winding down the business and prosecuting this action. It employed Cindy Dong (hereinafter "Dong") as an accountant to assist SEG Vanguard in its year-end preparation of books for taxes and similar documents to "keep SEG in good standing in New York." (*Id.* ¶ 16.) The company paid Ruan an annual salary of approximately $30,550 and Dong an annual salary of approximately $26,250. (*See* Transcript of March 22, 2002 Hearing (hereinafter "Hearing Tr."), at 27 and Defendants' Exhibit 7, Received at March 22, 2002 Hearing (hereinafter "Defs.' Ex."), at 3.) The company also paid for the medical and dental insurance premiums for Ruan and Dong. (*Id.*)

In addition to the employment of Ruan and Dong, SEG Vanguard continued to maintain its bank account with United Orient Bank, located at 10 Chatam Square in New York, New York. A review of the records of this account indicates that from October 2000 through January 2002, SEG Vanguard wrote over one hundred checks, many of which were for several thousand dollars. (*See* Defs.' Ex. 7.) During the same time period, SEG Vanguard made numerous deposits into its account. Many of these deposits were over $10,000 and one deposit, on February 16, 2001, was in the amount of $100,364.10. (*Id.*)

In 2001, Ruan also served as president of another company, called Golden Shuttle International Inc. (hereinafter "Golden Shuttle"), which was created to attract investors for projects in China. (Hearing Tr. at 45.) Golden Shuttle was an active corporation owned by a joint venture of SEG-affiliated companies called Hangzhou Westlake Golf Country Club (hereinafter "Westlake"). At some point in the past, Golden Shuttle was owned by SEG International, the same company that owned SEG Vanguard at the time this action was commenced. (*Id.* at 43.) Golden Shuttle has no employees and it is managed by Ruan from her home address. (*Id.* at 47.) Although the company was purportedly owned by Westlake, it received funds from SEG International. (*Id.* at 49.)

From October 2000 through January 2002, Golden Shuttle made a number of loans to SEG Vanguard for an approximate total of $200,000. These loans are reflected in SEG Vanguard's bank deposits during the same period (Hearing Tr. at 28 and Defs.' Ex. 7), and were used to pay business related expenses, such as the salaries and insurance premiums for Ruan and Dong, the company's payroll taxes, and telephone bills. (Hearing Tr. at 33.)[1]

1. During this time period, Ruan made hundreds of telephone calls to China from her home in New Jersey. (*See* Cornehls Aff., Ex. A.) For example, in July 2001, the month when SEG Vanguard filed this action, she placed seventy-five calls to China, totaling over fourteen hours in duration. (*Id.*)

On July 9, 2001 SEG Vanguard filed the instant action, alleging claims of conversion, diversion of corporate opportunities, unjust enrichment, accounting, fraud and breach of fiduciary duties. On December 12, 2001, defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 17(a) and 17(b). On December 20, 2001, SEG Vanguard filed a response in opposition to the motion to dismiss and on December 26, 2001, defendants filed a reply. On January 17, 2002, the Court held a hearing on the motion and ordered that the parties conduct expedited discovery related to the issue of subject matter jurisdiction and appear for a second hearing in March 2002. On March 1, 2002, both SEG Vanguard and defendants filed pre-hearing briefs in opposition to and in further support of the motion to dismiss. On March 22, 2002, the Court held a second hearing, during which Ruan and Dong testified about SEG Vanguard's past and current activities. At the end of the hearing, the Court ruled preliminarily on the record that SEG Vanguard had not met its burden of establishing the Court's subject matter jurisdiction. Subsequently, the Court entered an Order on March 27, 2002 granting defendants' motion and indicating that the Court's reasoning would be the subject of a further decision and amended order.

## II. DISCUSSION

### A. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "can raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence." *See Guadagno v. Wallack Ader Levithan Assoc.*, 932 F.Supp. 94, 95 (S.D.N.Y.1996). In addition, the court may conduct "whatever further proceedings are appropriate to determine whether it has jurisdiction." *Id.* In determining whether diversity of citizenship exists, "the court may consider evidence outside the pleadings, such as documentary evidence and witness testimony, and no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Peters v. Timespan Communications, Inc.*, No. 97 Civ. 8750, 1999 WL 135231, at *3 (S.D.N.Y. March 12, 1999) (citations omitted). *See also Integrated Utilities Inc. v. United States*, No. 96 Civ. 8983, 1997 WL 529007, at *2 (S.D.N.Y. Aug.26, 1997) ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn.").

SEG Vanguard brought its complaint against the defendants under 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). The statute further provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

It is well established that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Company, Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 322–23 (2d Cir.2001) (citing *Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir.1998)). Furthermore, if a plaintiff's "allegations of jurisdictional facts are challenged by [its] adversary in any appropriate manner, [it] must support them by competent proof." *United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994) (citing *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Even when they are not challenged, a district court may "still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt*, 298 U.S. at 189, 56 S.Ct. 780. Accordingly, the issue before the Court is whether SEG Vanguard has established by a preponderance of the evidence that there is complete diversity of citizenship among the parties.

**B.  *ANALYSIS***

■ SEG Vanguard asserts that it is a New York citizen because it is an inactive corporation organized under the laws of New York which had its last principal place of business in New York. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated Dec. 20, 2001 (hereinafter "Pl.'s Mot."), at 4.) Relying on this assertion, SEG Vanguard contends that there is complete diversity of citizenship because defendants are all citizens of other states, namely defendants Jianxiong Ji and Jianwen Ji are citizens of New Jersey, defendant Beston Development, Inc. is a citizen of Delaware and California and defendant Pierce Development Corporation is a citizen of Maryland. In their motion to dismiss, defendants assert that SEG Vanguard is an active corporation with it principal place of business in Livingston, New Jersey, where Ruan resides and manages the affairs of her employer. Based on this assertion, defendants maintain that SEG Vanguard is a citizen of New Jersey, thus destroying complete diversity of citizenship among the parties.

**1.  *SEG Vanguard's Status as an Active Corporation***

To determine whether SEG Vanguard's principal place of business is in New York or New Jersey, the Court must first address the question of whether the corporation is active or inactive. Although citizenship of parties to a case is normally determined as of the time the action is commenced, when a corporation has ceased business activity, its principal place of business is determined by the place in which it last transacted business. *See Peters*, 1999 WL 135231, at *4 (citing *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 907 (2d Cir.1996)) and *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 141 (2d Cir.1991).

SEG Vanguard asserts that its principal place of business is in New York because it last transacted business in New York and its only activities in 2001 were winding down its affairs and prosecuting this action. Relying principally on *Circle Industries USA, Inc. v. Parke Construction Group., Inc.*, 183 F.3d 105 (2d Cir.1999), SEG Vanguard maintains that it was inactive when this action commenced because it was not transacting business through these activities. (*See* Pl.'s Mot. at 8–9.) However, *Circle Industries* is inapposite to the instant case. In *Circle Industries*, a New York plaintiff challenged defendant's removal of the case to federal court on the basis of diversity jurisdiction, asserting that the defendant's principal place of business had shifted from Georgia to New York. *See* 183 F.3d at 108. The Court rejected this argument, finding that the defendant "did business only in Georgia, last operated an office in Georgia, and hired lawyers in Georgia to collect its remaining accounts receivable." *Id.* The Court concluded that although the defendant's sole officer and director resided in New York and received the corporation's mail there, "these contacts do not alter [the defendant's] citizenship because it is not transacting business through these activities." *Id.* The Court further held that

the mere fact that the defendant was engaged in a lawsuit did not render it an active corporation. *See id.* (citing *Wm. Passalacqua,* 933 F.2d at 131, 141).

Although the instant case contains several factual similarities to *Circle Industries,* the differences are greater. Like the defendant in that case, SEG Vanguard had closed its offices, shifted its address, and maintained involvement in a lawsuit at the time this action commenced. However, in the instant case, SEG Vanguard has also engaged in number of other activities that suggest that it is an active corporation. It paid salaries and medical and dental insurance premiums for two employees, it maintained an active bank account, it incurred large telephone bills to China where its parent corporation is located and most importantly, from October 2000 through January 2002 it borrowed over $200,000 from Golden Shuttle, another active corporation also run by Ruan from her home address.[2] While certain minimal activities are necessary to wind down a business and prosecute a lawsuit, SEG Vanguard has failed to provide a plausible explanation as to why these activities required borrowing $200,000 from October 2000 through January 2002, a time during which it was allegedly inactive. Indeed, when Ruan was questioned under oath at the March 22, 2002 Hearing about the purpose of the $100,364.10 deposit into SEG Vanguard's bank account on February 16, 2001, her response was "It has been so long. I can't recall it now." (Hearing Tr. at 30.) In summary, the Court concludes that at the time this action commenced, SEG Vanguard was engaging in activities that, while perhaps less substantial than previous years, were more than simply winding down the business and prosecuting this action.

### 2. *SEG Vanguard's Principal Place of Business*

Having concluded that SEG Vanguard was an active corporation at the time this action commenced, the next question is where SEG Vanguard's principal place of business was located. Courts in this Circuit recognize two different tests for determining a corporation's principal place of business. The structure and nature of the corporation determines which test a Court should apply. *See Peters,* 1999 WL 135231, at *5 (citing *Krauth v. Executive Telecard, Ltd.,* 887 F.Supp. 641, 646 (S.D.N.Y.1995)).

When a corporation's activities are decentralized and spread across numerous states, courts apply what is known as the "nerve center" test. *See Peters,* 1999 WL 135231, at *5. Under this test, courts focus on those factors that identify the place where the corporation's overall policy originates. *See id.* (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979)). Under the "nerve center" test, a corporation's principal place of business is at the location of its headquarters. *See Compucon Distrib. of New England, Inc. v. Cooper,* 685 F.Supp. 424, 425 (S.D.N.Y.1988).

When a corporation's activities are centralized, courts apply what is known as the "place of operations" or "locus of operations" test. *See Peters,* 1999 WL 135231, at *6. Under this test, a corporation's principal place of business is the location in which the corporation had the greatest

---

**2.** Furthermore, in light of the similarity of the activities of Golden Shuttle and SEG Vanguard, Ruan's testimony that Golden Shuttle was an active corporation in 2001 (Hearing Tr. at 43), suggests that SEG Vanguard was also an active corporation during this time.

Both companies had one or two employees, both were managed by Ruan from her home address, both received funds from SEG International in China and both had business connections with other SEG affiliated companies.

impact on, or the most extensive contacts with, the general public. *See id.* (citing *Mushroom Makers, Inc.,* 612 F.2d at 655).

As was the case with the defendant corporation in *Peters,* neither test is perfectly applicable to SEG Vanguard. *Cf. Peters,* 1999 WL 135231, at *6. SEG Vanguard's activities were neither spread across numerous states nor did they have any significant impact on or contact with the general public. However, under both tests, SEG Vanguard's principal place of business was New Jersey at the time this action was commenced. This is clearly the case under the "nerve center" test: SEG Vanguard's headquarters were in New Jersey at Ruan's home address. The "locus of operations" requires more consideration. Prior to April 2000, SEG Vanguard's greatest connection with the general public was in New York. It maintained offices, had an active bank account and managed its investments from New York. However, after the New York office closed, Ruan became the president of SEG Vanguard and she managed the company's affairs from her New Jersey home. She issued checks on behalf of the company, made numerous telephone calls to the company's parent corporation in China, and arranged for the company to borrow large sums of money. In addition, the corporation's official address for mail, service of process, and taxes shifted to New Jersey. Accordingly, under the "locus of operations" test, SEG Vanguard's principal place of business was in New Jersey.

After thoroughly considering the papers submitted by the parties and the testimony of Ruan and Dong at the March 22, 2002 Hearing, the Court concludes that SEG Vanguard is an active corporation and that it is a citizen of New Jersey. SEG Vanguard has failed to establish that there is complete diversity of citizenship among the parties by a preponderance of the evidence. As a result, the Court lacks subject matter jurisdiction over this action.

### III. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the Court's Order on this matter dated March 27, 2002 is AMENDED to incorporate the discussion set forth in this Decision and Order; and it is further

**ORDERED** that defendants' motion to dismiss the complaint is GRANTED.

**SO ORDERED.**